UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIA BRIGGS, Individually and on Behalf Of All Other Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:22-cv-03705 ) |
| STRATEGIC FINANCIAL SOLUTIONS, LLC, VERSARA LENDING, LLC, and JOHN DOES 1-100, | ) Judge: Hon. Edmond Chang ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO VERSARA'S MOTION TO
COMPEL ARBITRATION AND STRATFS LLC'S MOTION TO DISMISS**

**INTRODUCTION**

This case is neither a contract dispute nor a complaint of poor attorney representation. Plaintiff challenges Defendants' nationwide scheme of billing in violation of law, costing debtors money that could be put to settling their debts. To avoid liability, Defendants have constructed a thicket of shell corporations and contrived to hide behind small one-and two-person law firms – firms they help establish – in order to conceal their existence. But these tactics defeat their arbitration motion, which is their first line of defense. They are not even parties to the agreement they claim to assert.

Defendants have filed separate motions – one to dismiss Plaintiff's Amended Complaint, and one to compel arbitration. *See* ECF Nos. 18 and 19. Defendant Versara Lending, LLC ("Versara") has moved to compel arbitration, while Defendant Strategic Financial Solutions, LLC[1]

---

[1] Defendant SFS states in its brief that Plaintiff has incorrectly named Strategic Financial Solutions LLC as a defendant when the appropriate Defendant is StratFS, LLC. However, Defendants' corporate holdings are an intentional morass that Plaintiff is still attempting to sort out, and will seek further clarity in discovery. Nonetheless, both Strategic Financial Solutions, LLC and StratFS, LLC have active registrations with the New York Secretary of State (*see* Exhibit 1, a true and correct copy of the New York State

1

("SFS") has moved to dismiss for want of personal jurisdiction and for failure to state a claim. Each has joined the other's motion. Neither will avail Defendants.

## ARGUMENT

**1.     DEFENDANTS CANNOT COMPEL ARBITRATION AGAINST PLAINTIFF**

### a. Defendants Are Not Parties to Plaintiff's Agreement with Burnette Legal Group

Versara contends that neither Defendant has any relationship to Plaintiff. *See* Versara's Motion to Compel Arbitration ("Versara Mot."), ECF No. 19 at 2. (". . .Briggs is suing two companies that are not related to Monarch.") This is fatal to the arbitration motion, as a third party may not invoke another's arbitration agreement except under well-defined and strictly limited circumstances, none of which Versara briefs, and none of which either it or SFS meets.

Under binding Seventh Circuit and Illinois Supreme Court precedent, these facts doom this motion. First, a court, not an arbitrator, must decide whether a valid arbitration agreement is formed between two parties. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.") Second, as Defendants admit, they are not signatories to the agreement between Plaintiff and non-party Monarch. Versara contends that Plaintiff is be bound by her agreement with Burnette Legal Group, LLC d/b/a Monarch Legal Group ("Monarch") because "Defendants are simply 'stand-ins' for Monarch." Versara Mot. at 2.

---

Secretary of State's Entity Information pages for both Strategic Financial Solutions, LLC and StratFS, LLC). Additionally, attorneys in other cases in federal court have appeared on behalf of Strategic Financial Solutions, LLC. (*See* Ex. 2, a true and correct copy of the appearance of attorney Antonia Moran for Strategic Financial Solutions LLC from *Dejesus Cedeno v. Argent Trust Co. et al.*, Case No. 1:20-cv-9987, S.D.N.Y., ECF No. 38). Plaintiff does not concede at this stage that she has named the incorrect party, but also cannot know further the structure of Defendant and its related entities absent discovery.

2

Versara contends that Defendants are "parties" to the agreement with Plaintiff, and this action must therefore be arbitrated. Versara Mot. at 5 ("Where – as here – the parties have an arbitration provision that expressly delegates such questions to an arbitrator. . ."). In fact, while arbitrability is itself arbitrable, a judge must decide whether two parties have made a decision to arbitrate. *CCC Intelligent Solutions Inc. v. Tractable Inc.*, 36 F.4th 721, 723 (7th Cir. 2022) (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986))

In Illinois, "[a] nonsignatory to a contract typically has no right to invoke an arbitration provision contained in that contract." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021). A litigant "may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Giron v. Subaru of Am., Inc.*, No. 22-cv-75, 2022 U.S. Dist. LEXIS 210883 at *6 (N.D. Ill., Nov. 21, 2022)(quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Illinois recognizes three exceptions to this rule: third-party beneficiary, agency, and equitable estoppel. *Id.* In the face of this clear case law, Defendants do not attempt to brief the three recognized exceptions to this bar. In fact, none of them applies.

### i. Defendants Are Not Third-Party Beneficiaries

Defendants are dependent upon Illinois state contract law to show that they have the right to enforce an arbitration agreement. Illinois has a "strong presumption against conferring contractual benefits on noncontracting third parties. To overcome this presumption, it is not sufficient if the parties know, expect, or even intend that others will benefit from the agreement." *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 2018 IL App (1st) 163351 at ¶12 (citations omitted). Rather, "the language of the agreement must show that the contract was made for the direct, not merely incidental, benefit of the third party. This intention may be shown by an

express provision in the contract identifying the third party by name or by a description of the class to which the third-party beneficiary belongs." *Id.* at ¶12 (citations omitted)

Defendants attempt to argue that "the Retainer Agreement is extremely broad and covers third parties and all disputes" (Versara Mot. at 10). This is not sufficient. The names Versara and SFS are absent from the document, so such third-party beneficiary status is clearly not express. Third-party beneficiary status is also not implied. Illinois law requires that the contract be made *for the direct benefit of Defendants*. *See Giron,* 2022 U.S. Dist. LEXIS 210883 at *11, n. 3. Defendants point to no such provision, and there is none. The agreement's reference to "any of [Monarch's] third-party servicers," *see* Versara Mot. at Ex. 1, p. 15 ("6. Arbitration Agreement"), does not state or imply direct benefit to Defendants. Indeed, Defendants have disclaimed any relationship *whatsoever* to Monarch. *See* StratFS LLC's Motion to Dismiss, or in the Alternative, to Stay Action and Compel Arbitration ("SFS Mot.") at 3 ("SFS is not a party to any contract between Monarch and Monarch CS, and it does not have any contract of its own with Monarch.") and Versara Mot. at 2 ("Versara, a consumer lender with which Briggs had *zero* contact") (emphasis in the original).

### ii. Monarch Does Not Show an Agency Relationship to Defendants

Defendants also do not claim that Monarch is an agent of theirs through which they may exercise control and authority. As cited to *supra*, Defendants have expressly disclaimed a relationship. Even if Defendants argued that Monarch was an agent of Defendants, this claim would need to be supported by more than mere ipse dixit. *Sosa*, 8 F.4th at 641. Having failed to expressly assert, let alone prove, an agency relationship, Defendants cannot rely on one.

4

### iii. Defendants Cannot Show Equitable Estoppel

In Illinois, equitable estoppel is the third recognized exception a third party can show to enforce a contract. *Id.* at 639. Defendants have not asserted, let alone satisfied the standard, under this prong. In Illinois,

> A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399 (2d Dist., 2004).

In other words, if Defendants seek to show a claim of equitable estoppel, *Defendants* must show that they relied on an act or representation of *Plaintiff*. This reliance must be shown "by clear, concise, and unequivocal evidence." *American States Ins. Co. v. National Cycle*, 260 Ill. App. 3d 299, 308 (1st Dist. 1994). Defendants must further have shown that detrimental reliance in their initial motion. They cannot wait until their reply brief in order to attempt to introduce it. *Sosa*, 8 F.4th at 641. Defendants have not invoked this provision (or even used the term "equitable estoppel"), have not put forth evidence of a statement by Plaintiff, nor have they made any effort to show detrimental reliance on either defendant's part.

Further, courts in the Northern District of Illinois have shown that the mere existence of an arbitration provision in a contract does not, in and of itself, create the basis for a showing of detrimental reliance. *See Giron*, 2022 U.S. Dist. LEXIS 210883 at *14. There is simply no basis Defendants can use to show that Plaintiff has agreed to arbitrate with Defendants.

### b. Fraud Invalidates Contract Formation in Illinois

Should this Court decide that Defendants have the ability to stand in the shoes of Monarch and enforce its arbitration provision, Plaintiff has still set forth sufficient claims to show that any contract between Plaintiff and Monarch was void *ab initio*. It is longstanding law in Illinois that

5

fraud in the formation of a contract renders that contract void *ab initio*. *Settlers' Hous. Serv. v. Schaumburg Bank &amp; Trust Company, N.A.* (*In re Settlers' Hous. Serv.*), 568 B.R. 40, 65. (N. D. Ill. Bankr. 2017) (citing *George J. Cooke Co. v. Kaiser*, 163 Ill. App. 210, 213 (1st Dist. 1911). Such a contract is void and has no effect. *Id.*

Further, "[i]n order to constitute fraud invalidating a contract, a representation must be one of material fact, made for the purpose of inducing the other party to act; known to be false by the maker, but reasonably believed true by the other party, and upon which he relies and acts to his damage." *Shanahan v. Schindler*, 63 Ill. App. 3d 82, 93 (Ill. App. 1st Dist. 1978). These requirements broadly track the requirements to demonstrate common law fraud, which Plaintiff discusses in depth in Section 3 as a matter of law and Section 2 as to specific facts.

As such, even if Defendants are able to show they are somehow have rights under Illinois law to enforce the contract between Plaintiff and Monarch – which they have not done – they cannot enforce a contract that was formed fraudulently.

**2.      DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION**

A "[s]tate generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). As such, "where individuals purposefully derive benefit from their interstate activities, . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities . . . ." *Id.* at 473-74.

Personal jurisdiction takes two forms: general jurisdiction, which applies when the defendant's affiliations with the forum state "are so constant and pervasive 'as to render [it] essentially at home'" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); and specific jurisdiction, which is "case-specific" and exists where the defendant has "purposefully directed" its activities at residents of the forum state and where the plaintiff's claim is linked to the defendant's activities or contacts with the forum state. *Burger King Corp.*, 471 U.S. at 472-73.

In a Rule 12(b)(2) motion upon written submissions without an evidentiary hearing, plaintiff need only establish a *prima facie* case of personal jurisdiction (*Nelson v. Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983). Factual disputes are resolved in favor of jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "[I]f the court has personal jurisdiction over the defendant with respect to the class representative's claim, the case may proceed." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020).

### a. The Court Has Specific Jurisdiction Over SFS

Specific jurisdiction has three "essential requirements." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Id*. See also *Burger King Corp.*, 471 U.S. at 472; *Keeton v. Hustler Magazine, In*c., 465 U.S. 770, 774 (1984). Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. *Felland,* 682 F.3d at 673; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland,* 682 F.3d at 673.

### i. SFS has Purposely Availed Itself of the Privilege of Conducting Business in Illinois and Purposely Directed its Activities at Illinois.

SFS purposefully availed itself of the privilege of conducting business in Illinois and purposefully directed its activities at Illinois. Although Ryan Sasson, in his declaration, claims

7

that SFS "does not provide services to Monarch or Monarch's clients" (Ex. 1 to SFS Mot., Decl. of Ryan Sasson at ¶7), the log of activity in Plaintiff's file tells a different story.[2] From start to finish, SFS employees are involved in Plaintiff's file.

First, SFS solicits business in Illinois through SFS employees. In Plaintiff's case, initial contact was made by SFS employee Michael Cohen through a flier from a fictitious entity called "Polo Funding". (*See* Plaintiff's First Amended Complaint ("FAC") Exhibit A.) After Plaintiff called the phone number on the flier (answered by Defendant Versara, *see* FAC at ¶¶37, 39), and a consultation call, Briggs was sent a Client Retainer Agreement from Monarch Legal Group. On that proposed retainer agreement, the law firm contact was listed as Michael Cohen. (*See* Ex. 3, Client Retainer Agreement, p.3) On the activity provided to Plaintiff from her client file with Monarch, the file has been assigned to Michael Cohen at Sales. (*See* Ex. 4, File Activity Log, line 4.) Cohen is listed two additional times in the spreadsheet. The first is an e-mail on Sep. 21, 2021, where an e-mail is sent to micohen@financesolutions.org,[3] asking for an attorney contact. *Id*. at line 43. The second is referencing an e-mail to micohen@strategicconsulting.com, informing him that an attorney had reviewed and approved a previously negotiated settlement. *Id*. at line 99. Finance Solutions is listed as a company on SFS call script provided to SFS sales employees that were selling under Finance Solutions or Timberline Financial to help with the initial sales pitch of a proposed debt consolidation loan . *See* Ex. 5, SFS Call Script, p. 2.[4] Strategic Consulting is an SFS brand company. (*See* https://stratfs.com/.)

---

[2] The documents referenced in this section were, unless otherwise noted, produced according to Plaintiff's subpoena duces tecum to Burnette Legal Group, LLC, as referenced in ECF Nos. 23 to 26.

[3] Although Finance Solutions' website www.financesolutions.org currently only displays a graphic of the company's name, an archived copy of their website from 2018 advising potential clients on debt negotiating of their consumer debts. *See* Ex. 6.

[4] This document was produced by SFS in a lawsuit brought by ICE Legal in Florida. *Allison Johnson v. Strategic Financial Services et al.*, Case No. 05 2019 CA 057725, Eighteenth Judicial Circuit Florida, and was previously publicly available on ICE Legal's website.

Here, an employee operating under both SFS's and a related entity's e-mail domains serviced Illinois debtor Briggs's file, as part of the very scheme at issue, the work for which she was billed in her Illinois account.

After Plaintiff spoke to Michael Cohen, her information was entered into this system by a user name of Anand_exela_sfs, an SFS affiliate as denoted by the last three letters. *See* Ex 4, Client Activity Log, lines 53-63.

Only one small debt of Briggs was ever settled, work credited as being done by "dev_team". *Id.* at lines 96-98. Once the debt had been negotiated, it was only then submitted up to a Monarch attorney for approval. *Id.* at lines 99-100. Any fees and debt negotiation done by non-attorney employees of SFS employees are illegal under Illinois for non-attorneys who are not-licensed by the state, and it is this negotiation in which SFS has taken such great pains to hide its involvement. 225 ILCS 429/1 *et seq*. But the activity log contains more records of SFS employees' work. The user name sgatti_sfs is listed twice on Brigg's client activity log: the first for referring a debt to litigation defense, and the second for transferring the debt file. *See* Ex. 4, Client Activity Log, lines 103-104. Stephanie Gatti's linked in profile has her title as "Senior Manager of Litigation Operations at Strategic Financial Solutions NY." Under Gatti's Experience at SFS, it includes her overseeing "support and production teams who consult and negotiate debt for clients undergoing unsecured credit obligations through litigation and alternatives to bankruptcy." *See* Ex. 7, Stephanie Gatti Linkedin Profile, p. 1. According to the New York State Unified Court System, there is no licensed attorney by that name in New York State.

Finally, two days after this lawsuit was filed on July 18th, 2022, the user id lmontanile_sfs downloaded the entire log file for Julia Briggs on July 22, 2022. *Id.* at line 108. According to the LinkedIn page of a Lauren Smaldon (née Montanile), she worked for SFS from 2017 to 2021, who

supervised the "Negotiations Department" at that time. Further, while she now lists here employer as "multiple law firms", her LinkedIn page notes that she is only licensed in New York and New Jersey, *not Illinois*. Further, her New York State Unified Court System Attorney Detail Report, while not listing an employer, lists her address as those of SFS's New York City offices. Further, her New Jersey Courts Attorney Detail lists her employer as "Anchor Law Firm," one of the law firms Plaintiff pleads as an Affiliate firm in the FAC (¶112). *See* Ex. 8, Linked in Profile of Lauren Smaldon (née Montanile) and the New York and New Jersey Attorney Detail reports for the same.

It is this illegal debt negotiation by SFS that is at issue in this case, and is the basis for Briggs's complaint of fraud against SFS. Of the 484 SFS employees appearing on LinkedIn, fifty have a keyword linked to "Negotiation",[5] and 69 have a keyword linked to "Negotiations".[6] One such employee is Brad Wegner, whose job title at SFS is listed as "Sr. Director of Negotiations and Litigation Operations as Strategic Financial Solutions, NY and lists a Core Skill as being "Debt Collection and Negotiation." *See* Ex. 9, LinkedIn profile of Brad Wegner, p.1. Another example is Chris Wilson, whose job title is listed as "Manager of Negotiations at Strategic Financial Solutions". *See* Ex. 10, LinkedIn profile of Chris Wilson.

This type of debt resolution is precisely the type of work that SFS has discussed in self-produced news stories listed on its website. In a news story posted on May 23rd, 2018, SFS states that "Strategic Financial Solutions…provides comprehensive debt relief solutions for people in challenging financial situations. Strategic has successfully resolved more than $1 billion in high interest consumer debt for over 100,000 clients.." *See* Ex. 11, SFS News Story, at p. 1.

All of these contacts, with Brigg's file and those similarly situated to her, show that SFS purposefully availed itself of the privilege of conducting business in the forum state and

---
[5] *See* https://www.linkedin.com/company/strategic-financial-solutions-ny/people/?keywords=negotiation.
[6] *See* https://www.linkedin.com/company/strategic-financial-solutions-ny/people/?keywords=negotiations

purposefully directed its activities at the state. It solicited Illinois clients like Julia Briggs for both SFS and the Affiliate firms that it worked with, SFS employees illegally negotiated debts for Illinois residents, and SFS employees managed the case files, as evidenced in Julia Brigg's client file that was purportedly maintained by Monarch, but whose logs were downloaded by an SFS attorney two days after this lawsuit was filed. All of this activity amounts to both availing itself to doing business in the forum state through its debt negotiations for clients signed up by the various law firms, and directing its activities through its solicitation of Illinois residents.

### ii. Plaintiff's Injury Arose out of SFS's Illinois Activities

Plaintiff's injury arose out of SFS's Illinois activities, and her injuries occurred in Illinois. Plaintiff's claims bear a sufficient relationship with SFS's business activities in Illinois to expect SFS to defend itself in Illinois. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 431 (7th Cir. 2010 ([T]he contacts … and the wrongs alleged in uBID's complaint are so intimately related that GoDaddy cannot reasonably have been surprised to find itself sued in Illinois."). Plaintiff has suffered these injuries in Illinois where she resides. *See Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 712 (N.D. Ill. 2014).[7]

### iii. Forcing SFS to Litigate in Illinois Would Not Violate Traditional Notions of Fair Play and Substantial Justice

SFS "can only escape jurisdiction by making a 'compelling case' that forcing it to litigate in [Illinois] would violate traditional notions of fair play and substantial justice." *Interlease Aviation Inv'rs II (ALOHA) L.L.C. v. Vanguard Airlines*, *Inc.*, 262 F. Supp. 2d 898, 909 (N.D. Ill. 2003) (quoting *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) and *Burger King Corp.*, 471 U.S. at 477). SFS has not made such a compelling case. "In assessing whether

---

[7] "Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises." *Keeton,* 465 U.S. at 780 (citing *Calder v. Jones*, 465 U.S. 783, 788-789 (1984) and *McGee*, 355 U.S. 220).

jurisdiction is consistent with fair play and substantial justice the court should consider: (1) the burden on the defendant in litigating in the forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining an efficient resolution of the controversy; and (5) the interests of the several states in furthering fundamental substantive policies." *Interlease Aviation*, 262 F. Supp. 2d at 909 (citation omitted). SFS is a company that does work nationwide and has, by its own telling, successfully resolved more than $1 billion in high interest consumer debt for over 100,000 clients. It has not demonstrated that litigating in Illinois would impose upon it an undue burden. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 402 (7th Cir. 2020) ("Revolution has held itself as conducting business nationwide through both its interactive website and other websites. Thus, the burden of requiring Revolution to defend a lawsuit in Illinois is minimal.") Moreover, Illinois has a legitimate interest in holding SFS answerable on a claim related to the contacts it established with Illinois clients including Plaintiff. *See id.* ("Illinois has a strong interest in providing a forum for its residents, including Mr. Curry, to seek redress for harms suffered within the state by an out-of-state actor."); *see also McGee*, 355 U.S. at 223 (noting that a state frequently will have a "manifest interest in providing effective means of redress for its residents").[8] The Court may therefore properly exercise jurisdiction over Defendant.

### b. This Court Has Specific Jurisdiction Over Versara

Plaintiff incorporates her above argument regarding specific jurisdiction for Versara as well. Versara states that Plaintiff "has had zero contact" with Versara. Versara Mot. at 2 (emphasis omitted). This is untrue. Plaintiff validly pleads that Versara is the entity at the other end of the

---

[8] If the Court determines that there exists an ambiguity or lack of clarity in the factual record, Plaintiff requests an opportunity to take jurisdictional discovery and file an amended complaint. *See Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, No. 18 C 2115, 2018 U.S. Dist. LEXIS 134701, at *4-10 (N.D. Ill. Aug. 9, 2018).

line when Plaintiff called to inquire about a possible loan. FAC at ¶¶ 37, 39 Additionally, Plaintiff pleads that Versara routinely calls back potential clients of SFS once they fill out forms expressing interest in loans for their fraudulent online sites. FAC at ¶ 76. Versara, like SFS, purposefully avails itself of Illinois as a forum for business.

3. **PLAINTIFF HAS STATED A VALID BASIS FOR RELIEF**

   a. **Plaintiff Has Validly Stated A Basis for Relief**

On a motion to dismiss under Rule 12(b)(6), the court must draw all reasonable inferences in favor of the plaintiff, construe the allegations in the complaint in the light most favorable to the plaintiff, and accept as true well-pleaded facts and allegations in the complaint. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). Notice pleading is all that is required in a complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief" (citation and quotations omitted)). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)(quot. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)).

   b. **Plaintiff Has Pleaded Fraud with Particularity**

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead fraud with particularity. *See also Montgomery Wards, L.L.C. v. Mease*, No. 99 C 5657, 2000 U.S. Dist. LEXIS 6090, at *12 (N.D. Ill. May 1, 2000) ("in all averments of fraud....the circumstances constituting fraud...shall be stated with particularity"). Generally, Rule 9(b) requires that a plaintiff plead the

13

"who, what, when, where, and how" of the fraud. *See Montgomery Wards,* 2000 U.S. Dist. LEXIS 6090, at *12. Rule 9(b), however, "is not designed to prevent a plaintiff from bringing fraud claims simply because the plaintiff lacks knowledge as to the entire scheme." *Id.* at *13 (quoting *Johnson v. Midland Career Inst.*, No. 93 C 1363, 1993 U.S. Dist. LEXIS 211356, at *20 (N.D. Ill. June 15, 1993)). Indeed, a plaintiff who provides a "general outline of the fraud scheme sufficient to reasonably notify the defendants of their purported role in the fraud satisfies Rule 9(b)." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) (quotations and citation omitted).

In Illinois, the elements of common law fraud are: "(1) a false statement of material fact by the defendant, (2) who knew that the statement was false (3) and intended to induce the plaintiff to act in reliance upon the statement, (4) the plaintiff reasonably relied upon the truth of the statement, and (5) the plaintiff suffered damage as a result of action in reliance upon the statement." *Castlerigg Master Invs., Ltd. v. Abbvie, Inc.*, 2021 IL App (1st) 200527, ¶20. Plaintiff easily satisfies each. Plaintiff shows that Defendants mailed her an invitation from a non-existent entity to apply for a debt consolidation loan which it used to then sell her on a putative attorney-client-based debt settlement service. (FAC at ¶¶ 21, 36-38). Versara then represented to her, through the use of a notary, that she would be retaining Monarch to represent her in debt settlement. (FAC at ¶ 39). These were false statements of material fact. Defendants knew these to be false. (FAC at ¶¶ 69-109). These statements were intended to induce the Plaintiff to act in reliance of the statements (*Id.*) Plaintiff reasonably believed at the time that she was signing up for attorney debt settlement services and not to be overcharged and defrauded. (FAC at ¶¶ 39-44). Plaintiff overpaid for what she believed to be attorney services (but were not) by at least $5,094.97. (FAC at ¶¶ 45, 55). These same allegations also state the "who, what, where, when, and how" of the

fraud. While Plaintiff continues to investigate the underlying case – literally new information, victims, or confidential informants come forward by the week – the fact that Plaintiff does not know every detail of Defendants' inner workings does not defeat her claim.

### c. Plaintiff Has Sufficiently Pleaded ICFA

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") has an even lower bar that common law fraud. It requires "(1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) that the deception occur in -a course of conduct involving trade and commerce; and (4) damages." *Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 655 (Ill. App. 1st Dist. 2001). Plaintiff incorporates her argument from the prior paragraph here.

Additionally, SFS's statement that Plaintiff "has not pled any allegations regarding any misrepresentation or conduct by SFS" is flatly wrong. Plaintiff not only generally pleads that the entire scheme to hide behind purported attorney-client relationships is designed and engineered by SFS (FAC ¶¶ 64-109), Plaintiff further supports this with direct evidence from both a confidential informant (FAC ¶¶ 13, 14, 75, 77, 79, 84, 86 ("the purported retainer agreement are prepared by SFS and provided to the Affiliate firms"), 88, 93, 97, 102, 108) as well as from findings of fact by the State Bar of North Carolina (FAC ¶¶ 122, 126-130, 132, 134, 136-137).

### CONCLUSION

For all the above reasons, Plaintiff respectfully requests this Court deny Defendants' motions in their entirety. To the extent that this Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Defendants' Motion for Dismiss for Failure to State a Claim, Plaintiff respectfully requests leave to replead.

Dated: December 21, 2022　　　　　　　　　　　Respectfully submitted,

*/s/ Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 545-4653
malmstrom@whafh.com

Scott Priz
**PRIZ LAW LLC**
3230 S. Harlem Ave., Suite 221B
Riverside, IL 60546
Telephone: (708) 762-3143
priz@priz-law.com