## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JULIA BRIGGS, on behalf of herself and all other similarly situated persons, | ) ) ) | |
| | ) | **Case No. 22 C 3705** |
| Plaintiff, | ) ) | |
| | ) | **District Judge Edmond E. Chang** |
| v. | ) ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| STRATEGIC FINANCIAL SOLUTIONS, LLC; VERSARA LENDING, LLC; and DOES 1-100, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this matter before the magistrate judge on referral for discovery supervision (D.E. 95) including a fully briefed motion ("Motion to Quash"; D.E. 76) by third parties Timothy Burnette and Burnette Legal Group d/b/a Monarch Legal Group (collectively "Monarch") to quash a subpoena Plaintiff Julia Briggs served on the non-objecting third party City of Chicago ("the City"), the Court decides the Motion to Quash with the magistrate judge's broad discretion to manage discovery, *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), and in the interest of promoting the just, speedy and inexpensive determination of the matter. Fed. R. Civ. P. 1.

## BACKGROUND

Plaintiff seeks to maintain a class action against Defendants StratFS LLC (named in the complaint as Strategic Financial Solutions, LLC ("SFS") and Versara Lending, LLC ("Versara") (collectively "Defendants"). The below summary of Plaintiff's allegations is drawn from the district court's March 27, 2024, Memorandum Opinion ("3/27/24 Mem. Op."; D.E. 65) denying various motions to dismiss and to compel arbitration. The district court eventually stayed certain

aspects of this case during the pendency of an action by the Consumer Financial Protection Board against Defendants in the Western District of New York. 4/25/24 Order (D.E. 68).

Briggs alleges that SFS is at the center of a fraudulent scheme to bill clients for services as a debt-relief consultant for more than is permissible under state debt-relief statutes. First Am. Compl. (D.E. 5) ¶ 1. According to Briggs, SFS creates fictional entities to solicit individuals with high consumer debt. *Id.* ¶ 2. These individuals are then directed to law firms, which are fronts for individual attorneys recruited by SFS to act as intermediaries with clients, but without the clients' knowledge of SFS's role. *Id.* ¶ 5. At SFS's direction, these attorneys set up law firms, enter into retainer agreements with clients, and bill clients for upfront and monthly fees, using a notary whom SFS pays for and an SFS payment processor. *Id.* SFS takes a majority portion of the fees charged by the law firms; the firms receive only around 3% to 10% of the fees. *Id.* ¶¶ 5, 12. These fees far exceed the amount that non-attorneys are allowed to charge for debt-relief services under state statutes, which limit non-attorney fees to contingency payments based on the amount of debt reduction. *Id.* ¶¶ 3, 4. The attorneys do not personally contact creditors; instead, only SFS employees conduct any debt negotiations on behalf of clients. *Id.* ¶ 11. The attorneys' sole role is to set up the retainer agreement and payment, and sometimes (although it seems rarely, and in Briggs's case never) appear in court when creditors sue clients. *Id.* ¶¶ 12, 52, 53. All of the communications that clients attempt to have with their attorneys are actually redirected to SFS call centers, again without disclosure to the clients. *Id.* ¶ 2, 14. Versara is an SFS subsidiary that allegedly participates in this scheme. *Id.* ¶ 23.

Briggs is alleged to be a victim of this fraudulent scheme and was charged thousands of dollars by Monarch Legal Group, which is alleged to be an SFS-affiliated law firm, *id.* ¶ 21, 38, 45, and which is the entity seeking to quash Plaintiff's subpoena upon the City. Only one of her

debts was ever settled, and it was SFS (not Monarch), unbeknownst to Briggs, that negotiated her debt on her behalf, she claims; indeed, Monarch never appeared in a creditor lawsuit brought against her. *Id*. ¶¶ 49, 52, 53.

In opposing personal jurisdiction over SFS, SFS has argued to the district court that it is a holding company that holds stock and interests of subsidiary companies, none of which themselves are Illinois entities. SFS Mot. (D.E. 18), Sasson Decl. (D.E. 18-1), ¶¶ 2-4. SFS asserted that one of its subsidiaries is Monarch Client Services, LLC ("Monarch CS"), which "provides non-legal and administrative support services to Monarch Legal Group" – the entity described as "Monarch" and comprised of Burnette and the Burnette Legal Group, which Plaintiff describes as a "façade" law firm to which she paid exorbitant fees for services actually provided by SFS. *Id.* ¶¶ 5, 6; 9/30/22 Status Report (D.E. 16); First Am. Compl. ¶¶ 21, 38, 45, 49, 52, 53. But an SFS officer contended in the district court that SFS "does not provide services to Monarch or its clients, has no control or involvement in the services that Monarch CS provides to Monarch or Monarch's clients, and is not a party to any contract between or among Monarch CS, Monarch, and/or Timothy Burnette." Sasson Decl. ¶ 7. Briggs disagreed, citing documentary materials she obtained by subpoena, and SFS disagreed with her, claiming the subpoenaed materials were not "actual evidence," but the district court found a sufficient basis for personal jurisdiction over SFS in Illinois under a "minimum contacts" analysis. 3/27/24 Mem. Op. at 7-9.

Further, Defendants have asserted in this litigation that they are entirely separate entities from Monarch and thus the wrong parties to the suit. *Id.* at 9. Defendants made that assertion, while also claiming that for arbitration purposes, they are effectively the same party as Monarch, in support of their motion to compel arbitration and to stay the case as a whole pending arbitration, but the district court denied that motion. *Id.* at 9-12.

Meanwhile, Defendants are part of an action brought by the U.S. Consumer Financial Protection Bureau, titled *CFPB, et al. v. StratFS, LLC, et al.*, No. 24-cv-00040-EAW-MJR (W.D.N.Y.) ("CFPB Case"), in which the U.S. District Court for the Western District of New York has issued a temporary restraining order and a preliminary injunction. Position Statement by CFPB (D.E. 51). The CFPB Case, which includes placement of Defendants into a receivership, prompted the district court in the instant action to conduct an inquiry into just how this action could proceed, and the result, determined on April 25, 2024, was that the district court authorized Plaintiff "to seek non-party discovery on potential claims against individuals or entities that are not part of the Receivership" in the CFPB Case; otherwise, the district court stayed the case. 4/25/24 Order (D.E. 68).

In another "meanwhile," Monarch has been involved in separate litigation with the City in at least the following actions in the Circuit Court of Cook County: *City of Chicago v. Burnette Legal Group, LLC et al.*, Case No. 2022-CH-7197, Circuit Court of Cook County ("the City Lawsuit"); and *Burnette Legal Group LLC et al. v. City of Chicago*, Case No. 2023-CH-03714 ("the Phishing Action."). In the City Lawsuit, the City of Chicago has sued Monarch and SFS for a fine and injunctive relief for alleged violation of municipal code provisions by Monarch and SFS for having, among other things, engaged in deceptive practices including "[c]oncealing, suppressing, and/or failure to disclose to consumers that debt settlement work will be performed by non-lawyers employed by another entity," i.e., allegations that resemble those brought in the instant action. Motion to Quash, Ex. B. Monarch in its Motion to Quash says that it and SFS have produced documents designated "confidential" under a City Lawsuit protective order. Motion to Quash at 5. The City Lawsuit protective order provides that a "designating party" (in this case, Monarch and SFS, insofar as they have designated their City Lawsuit document productions as

"confidential") has the burden of seeking relief from subpoenas directed at their "confidential" documents in the court that issued the subpoenas (in this case, the Northern District of Illinois, i.e., this Court). *Id.*, Ex. C ⁋ 12(c). The City Lawsuit's protective order allows "confidential" designations to be applied to documents described as follows in the order, except for such documents that are available to the public:

    (a) information prohibited from disclosure by statute;

    (b) information that reveals trade secrets;

    (c) research, technical, commercial, or financial information that the party has maintained as confidential;

    (d) medical information concerning any individual;

    (e) personal identity information;

    (f) income tax returns (including attached schedules and forms), W-2 form, and 1099 forms;

    (g) personnel or employment records of a person who is not a party to the case;

    (h) sensitive personal, financial, and/or commercial information of an individual or entity that is not a party to the case.

*Id.* ⁋ 2. Monarch and SFS apparently designated their *entire* document productions in the City Lawsuit as "confidential." Motion to Quash at 5. The type of materials that may be designated "confidential" under the City Lawsuit protective order mirror those that may be so designated under the protective order entered in the instant matter, except subparagraph (h) of the City Lawsuit protective order is not included in the instant case's protective order. Agreed Confidentiality Order (D.E. 72) ⁋ 2. Both protective orders limit the use of "confidential" documents to the action in which they are produced, and both limit dissemination of "confidential" documents to specific circumstances. Motion to Quash, Ex. C ⁋ 5; Agreed Confidentiality Order ⁋ 5. Monarch has described the 28,029 pages of documents in its City Lawsuit production as including "client files,

litigation files, agreements, agendas, and employee lists," and it has described the 4,323 pages in SFS's City Lawsuit production as including "training materials, operating procedures, client face-to-face materials, organizational chart and agreements."  Motion to Quash at 5.

The Phishing Action is a Circuit Court lawsuit Monarch brought to quash an investigative subpoena, served on Monarch by the City, relating to a purported phishing email directed at some Monarch customers and a purported data breach at Monarch, although Monarch's lawsuit alleged that it was an attempt to conduct back-door discovery for use in the earlier-filed City Lawsuit.  *See generally* Motion to Quash, Ex. E.  In February 2023, the City's Law Department emailed counsel for Monarch the following:

> We recently learned that several of Monarch's customers have received emails that may be scams. The emails purport to be communications from Monarch employees, mention the City's lawsuit against Monarch, and ask recipients to fill out a form with their banking information in order to receive refunds. The emails come from generic Outlook email addresses, using the names "Allison Weiss" or "Thomas Hall." We do not know who is sending these emails, but we are concerned that unsuspecting consumers may be falling prey to a scheme to obtain their banking information and wanted to make sure you were in the loop. Some Monarch customers told us that they called Monarch, which told the customers that the emails were scams and to disregard them. We request that Monarch notify all of its customers of these suspicious emails so as to avert any further harm. We'd also appreciate if you could let us know once Monarch has done so. Happy to find a time to discuss further if that would be helpful.

*Id.* About a month and a half later, on March 27, 2023, the City served its investigative subpoena, seeking 13 categories of documents related to the purported phishing email as well as communications Monarch had with its customers about such emails and measures Monarch had taken to investigate or prevent data breaches.  Monarch asserts that ultimately it responded to the subpoena by producing documents it described as relating to "client communications regarding the phishing email, Monarch's investigation of the potential phishing scam, and various client

information related to the phishing email." *Id.*, Ex. D ⁋ 5. Monarch also asserts that it marked as "confidential" the documents it produced in the Phishing Action. *Id.*

The Motion to Quash arises from a subpoena Plaintiff served on the City of Chicago on May 28, 2024, seeking production of documents Defendants and Monarch produced to the City in the City Lawsuit and the Phishing Action. Subpoena (D.E 76-1).

## DISCUSSION

As a preliminary matter, the Court has little difficulty concluding that Monarch, as a non-party to this action (no matter how intimately related it may or may not be to Defendants), has standing to move to quash the subpoena on the City. The documents Monarch produced in the City Lawsuit and the Phishing Action are sought by the subpoena, Monarch has sought to assert "confidentiality" protection over them (although in an apparent blanket fashion, designating every single page of the productions as "confidential"), and at least the protective order in the City Lawsuit provides Monarch with the right to challenge the subpoena in this Court. Accordingly, the subpoena was addressed to Monarch's legitimate interests, so it has standing to move to quash. *See Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers, Inc.*, No. 22 C 5757, 2023 WL 2974083, at *2 (N.D. Ill. Apr. 17, 2023) ("Examples of legitimate interests include … production of private information about the party that may be in the possession of a third party"). Monarch's legitimate interests include production of information concerning its business operations, clients, and internal procedures, aside from whether any of those materials were designated properly as "confidential" under any protective order. With the standing question resolved, the Court moves to Monarch's arguments to quash the subpoena.

I. **Monarch's Assertion of "Confidentiality" Over the Documents Does Not Justify Quashing the Subpoena for the City Lawsuit Documents.**

Monarch's first argument is that by virtue of the subpoenaed documents having been designated as "confidential" under the City Lawsuit protective order and in the Phishing Action (although no protective order from that matter was submitted to the Court), the Court should quash the subpoena simply because the protective order(s) in the other matters limit their use and disclosure, and because Monarch, as a law firm, has client confidentiality obligations under Illinois Rule of Professional Conduct 1.6. The Court disagrees. The City Lawsuit protective order specifically anticipates the subpoenaing of "confidential" information and thus provides that Monarch, as the designating party, can challenge the subpoena in the issuing court. The City Lawsuit protective order also anticipates that documents produced in the order may well be produced in other litigation under a lawful court order. *See* Motion to Quash, Ex. C ¶ 12(c) ("nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court").

But it does not bar the issuing court from upholding the subpoena. Here, this Court has no reason to believe that Monarch's interest in the confidentiality and business sensitivity of its document productions in the City Lawsuit and the Phishing Lawsuit will not adequately be protected by the Agreed Confidentiality Order in this matter even if Monarch designates all of the subpoena production as "confidential" under that order (subject to challenge as prescribed by the order), as Monarch and SFS already have designated all of their productions to the City. *See Architectural Iron Workers' Local No. 63*, 2023 WL 2974083, at *5. As for client confidentiality or privileged information, the Court presumes that to the extent any of the productions in the City Lawsuit and the Phishing Action were privileged, or somehow protected from production by reason of client confidentiality, Monarch either waived those protections when it produced the

documents, determined that it would not assert such protections, or was subject to an adverse judicial determination as to those protections – because the subpoena calls only for documents Monarch *already* produced to the City. The authorities cited by Monarch in support of quashing the subpoena in a blanket fashion on the ground that the materials are "confidential" (Motion to Quash at 7) are not persuasive for that point.

Second, Monarch argues that "Briggs should be required to subpoena Monarch, so that Monarch can properly protect its confidential materials," *id.* at 8, but Monarch cites no authority for the proposition that a party must subpoena only one party that might possess relevant information, or that it must subpoena the party with the greater interest in preserving confidentiality interests. The Court knows of no such authority and will not impose such a rule.

The Court has afforded Monarch ample opportunity to attempt to block production of the subpoenaed documents based on Monarch's confidentiality arguments, but the Court has found them wanting. For these reasons, the Court denies the Motion to Quash as to the materials Monarch produced to the City in the City Lawsuit, where the allegations bear a close resemblance to those in this matter, and discovery of the materials Monarch produced in the City Lawsuit is likely to generate efficiencies in discovery in this matter. *See* Fed. R. Civ. P. 1.

Further, this decision is consistent with the considerable breadth of the authorization the district court has given Plaintiff for non-party discovery directed at potential claims against individuals or entities not part of the CFPB Case receivership. As for Monarch's argument that the subpoena too broadly seeks disclosure of every document produced in the City Lawsuit without tailoring the document request to specific issues, Reply (D.E. 80) at 4-5, the Court will not put the City to the exercise of sorting through the Defendants' production to make relevancy calls. Monarch already produced these documents to the City in an action highly similar to this one, and,

if anything, the district court's authorized scope of non-party discovery under the 4/25/24 Order is broader than the tailored approach Monarch is suggesting. The Court is denying the Motion to Quash as to the City Lawsuit documents in an exercise of the magistrate judge's broad discretion to manage discovery efficiently. *Jones*, 737 F.3d at 1115; Fed. R. Cir. P. 1.

## II. Monarch Carried Its Burden on Quashing the Subpoena for the Phishing Action Materials Because the Court Could Not Determine Their Relevance to This Matter.

Monarch asserts that the production in the Phishing Action bears an insufficient relationship to the instant action and thus is not sufficiently relevant to the instant action for discovery purposes. Rule 26(b)(1) provides the standard for discovery of information, which must be relevant to the claims or defenses in the action, and proportional to the needs of the case. Relevancy for this purpose is broad and is distinct from the question of admissibility at trial. *See Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3-4 (N.D. Ill. Sept. 25, 2020).

The materials Monarch produced to the City in response to the City's administrative subpoena and inquiry into purported phishing emails or a purported data breach appear far removed from the consumer fraud allegations that Plaintiff has made against SFS and Versara in this case. Plaintiff has alleged that Monarch was, if not a closely related entity to Defendants, at least a tool or "façade" law firm used to carry out Defendants' alleged fraud. But the Court does not see a clear connection, at least on these motion papers, between the Phishing Action materials requested in the administrative subpoena and the claims and defenses in the instant case. Plaintiff, in response to the Motion to Quash (D.E. 79), did not articulate what relevance the Phishing Action materials might have to this action; instead, Plaintiff relied on an argument that Monarch's standing to challenge the subpoena is limited to assertion of its confidentiality interests, in that relevance to the action is outside the scope of permissible non-party standing under *Parker v. Four*

10

*Seasons Hotels, Ltd.*, 291 F.R.D. 181 (N.D. Ill. 2013). The Court, though, does not see third-party standing as so limited and instead follows *Noble Roman's, Inc. v. Hattenhauer Dist. Co.*, 314 F.R.D. 304, 305-06 (S.D. Ind. 2016), which saw third-party standing to challenge a subpoena as encompassing Rule 26(b)(1) relevancy.

With Plaintiff not having advanced a reason why the Phishing Action materials are relevant to this action, the Court is granting the Monarch motion to compel as to those materials.

## CONCLUSION

For the foregoing reasons, the Motion to Quash is denied in part (as to the requested documents Monarch produced in the City Lawsuit) and granted in part (as to the requested documents Monarch produced in the Phishing Action).

**SO ORDERED.**

                      **ENTER:**

                      **GABRIEL A. FUENTES**
                      **U.S. Magistrate Judge**

**Dated: March 24, 2025**