**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JULIA BRIGGS, on behalf of herself and all others similarly situated, | **)** | |
| | **)** | |
| | **)** | |
| *Plaintiff,* | **)** | Case No.:  1:22-cv-3705 |
| | **)** | Judge: Hon. Edmond Chang |
| v. | **)** | Magistrate: Hon. Gabriel Fuentes |
| | **)** | |
| STRATEGIC FINANCIAL SOLUTIONS, LLC; VERSARA LENDING, LLC; and DOES 1-100, | **)** | **(FILED UNDER SEAL)** |
| | **)** | |
| | **)** | |
| *Defendants.* | **)** | |

## PLAINTIFF'S MOTION TO COMPEL THIRD-PARTY DISCOVERY

Plaintiff Julia Briggs hereby moves this Court for an order requiring third party Timothy Burnette ("Burnette") for an order compelling the production of documents requested under the subpoena served upon Burnette on October 11, 2025 (*see* Ex.  A., Subpoena to Timothy Burnette). On October 24th, 2025, counsel for Plaintiff received Burnette's objections to Plaintiff's Subpoena for Documents.  (*See* Ex. B , Burnette's Objections to Plaintiff's Subpoena for Documents.)  After meeting and conferring twice, Plaintiff now moves this Court to order production of responsive documents not already agreed to between Plaintiff and Burnette.

## FACTUAL BACKGROUND

This case involves the alleged fraudulent marketing and sales of debt-relief practices by Defendants, sophisticated companies that are currently in receivership.  Defendants' motions to dismiss and motion to compel arbitration were denied on March 27, 2024.  *See* ECF No. 65.  This Action is stayed as to the named Defendants, but this Court has authorized third-party discovery through April 1, 2026 (*see* ECF Nos. 68, 74, 105), while Magistrate Judge Fuentes has allowed third party discovery through May 1, 2026.  (*See* ECF No. 139.)  Since that time, Plaintiff has sent

1

out several subpoenas to third parties (including several former employees of Defendants), including the subject of this motion, Timothy Burnette.  Burnette is the Manager of Burnette Legal Group LLC d/b/a Monarch Legal Group LLC ("Monarch").  (See Ex. C., Annual Report Burnette Legal Group LLC dated January 31, 2025.)  Monarch was the purported law firm that Plaintiff Julia Briggs had hired to negotiate her consumer debts, although, as described *supra*, the actual debt negotiation was handled by Defendants, while the management of the law firm was handled by other third parties controlled by Jason Blust.

On November 20, 2025, counsel for Plaintiff met and conferred with counsel for Burnette regarding Burnette's objections.  On December 29, 2025, Plaintiff's counsel met and conferred again with Burnette's counsel, and Burnette was willing to produce a small number of documents in respond to Plaintiff's subpoena relevant to Burnette's ownership in Monarch and other law firms that contracted with Defendants.  Although Plaintiff has endeavored to work with Burnette's counsel to limit the burden on Burnette, Burnette is unwilling to produce any documents beyond the agreements that Burnette had with the law firms and companies controlled by Jason Blust ("Blust") with which Monarch and Burnette's other law firms had contracted, and the contracts between Burnette's law firms and the subsidiaries of Defendants.[1]  In the course of those meet-and-confers, counsel for Burnette stated that there were approximately 9,000 e-mails under the control of Burnette relating to his law firm that Burnette was unwilling to produce.  (*See* Dec. of Carl Malmstrom, ¶2.)  Left with no choice, Plaintiff Julia Briggs now moves to compel the relevant documents in Burnette's possession.

## **LEGAL STANDARD**

Under Federal Rule of Procedure 26(b)(1), parties "may obtain discovery regarding any

---

[1] Plaintiff respectfully notes that certain exhibits were left off of these agreements, and those exhibits also form part of this motion.

2

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." District judges enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery in a given case. *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1998 WL 206367 (7th Cir. 1998), 1052. Discovery is ordinarily allowed "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682 (N.D. Ill., Apr 17, 2019), *citing to In re Aircrash Disaster Near Roselawn, Ind.* Oct. 31, 1994, 172 F.R.D. 295, 303 (N.D. Ill. 1997); *see also Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D.Ill. 2004) ("If relevance is in doubt, courts should err on the side of permissive discovery."). The party opposing discovery bears the burden of showing why it should be disallowed. *Belcastro v. United Airlines*, Inc., No. 17 C 1682 (N.D. Ill. Apr 17, 2019), *citing to Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450. (N.D. Ill. 2006).

## **ARGUMENT**

### I. Burnette Must Search for and Produce Documents Relating to Monarch's Relationship to Defendants and Parties Related to Defendant's Fraudulent Scheme

Plaintiff Julia Briggs has requested documents from Burnette, pursuant to Judge Chang's Order on April 24, 2024, allowing Plaintiff to seek non-party discovery on "potential claims against individuals or entities that are not part of the Receivership in *CFPB et al. v. Stratfs, LLC et al.,* 24−cv−40 (W.D.N.Y.)." (ECF No. 68.) As described above, Timothy Burnette was the

3

managing member of the law firm that nominally serviced Julia Briggs consumer debts although, as described *supra*, all of the day-to-day operations of the law firm were outsourced to third parties, many of whom were non-attorneys. These documents would be relevant, as to the extent that Monarch was performing its duties under the retainer contract and supervising non-attorneys who were negotiating her debts, and what potential liability third parties like Timothy Burnette and Monarch have for this alleged fraud.

As preliminary matter, Burnette, in his objections to Plaintiffs requests, often states that "in his individual capacity, there are no documents responsive to this request." (*See* Ex. B. Burnette Objections to Subpoena for Documents, at 3, 4, 7, 10, and 11). It is unclear whether this means that Burnette has no responsive documents in his possession in any capacity other than his personal capacity, or if he simply has no documents. To be clear, if Burnette has any relevant documents in his control responsive to Requests No, 1, 2, 3, 7, 11, and 12, Plaintiff now moves to compel production of those documents from Burnette. As Burnette has admitted control over responsive documents to the remainder of Plaintiff's request but has not yet produced all of the responsive documents, the remaining requests are described in more detail below. As a result of our meet and confers with Burnette's attorneys, it is clear that Burnette has no relevant documents in response to Requests No. 16 and 17. For the reasons discussed below, Plaintiff asks this Court to compel production of the remaining Requests.

### a. Request No. 4 and No. 14.

Request No. 4 asks for all documents "sufficient to show Your relationship to every Defendant and every one of Defendants' parents, subsidiaries, officers, employees, affiliates, divisions, and/or any agents acting or purporting to act on their behalf in any of the cases referenced in Requests 1, 2, or 3." Request No. 14 asks for all documents "related to Defendants or any

4

Defendants' parents, subsidiaries, offices, employees, affiliates, or divisions' work on behalf of consumers and/or Law Firms that in any way relate to this litigation or to the litigation captioned *Consumer Financial Protection Bureau et al. v. StratFS, LLC et al.*, Case No. 1:24-cv-40, W.D.N.Y." One of Defendants subsidiaries, Monarch Client Services LLC ("MCS"), serviced Monarch's accounts since at least January 1, 2019. (*See* Ex. D., Service Agreement between Monarch and Monarch Client Services, LLC, dated January 1, 2019.) MCS's sole member was Defendant Strategic Financial Services, LLC ("SFS"). (*See* Ex. E., Monarch Client Services Operating agreement dated January 11, 2019.)

Burnette responded with a series of boilerplate objections, including that various terms were ambiguous, that the Request was overbroad, unduly burdensome and not proportional to the needs to this case, that the request was irrelevant to the claims asserted in this, that they are outside the scope of discovery allowed by the Court in this matter, that they are discoverable from other sources, objecting to the extent that it seeks discovery protected by privileges, and that it seeks confidential and personally sensitive information regarding third parties.

After meeting and conferring with Plaintiff's counsel, Burnette was only willing to produce the contracts between Burnette's various law firms of which he was a member as well as the servicing companies that were subsidiaries of SFS.

Contrary to Burnette's assertions, the relationship between Burnette and MCS is highly relevant to Plaintiff's case. The type of work done by the servicing companies like MCS goes to the heart of Plaintiff's case. (*See* Plaintiff's First Amended Complaint, ¶¶12, 16, 85, 96-99, and 106-109, 171-186, 187-197, and 198-202, ECF No. 5.) Burnette and the law firms were key players in the alleged frauds committed on Briggs and other members of the putative class. Establishing the roles of each entity to this alleged fraud is key to determining any potential

liability of the Defendants and potential additional Defendants like Burnette and the law firms of which he was a member.

Although the agreements between Monarch and MCS that were produced are relevant and useful to Plaintiff, they are the starting point, rather than the ending point of responsive documents to this request. In Plaintiff attorney's meet-and-confers with Burnette's attorneys, Plaintiff was willing to limit this request to documents "sufficient to show any business relationships between Mr. Burnette (and his entities) and SFS, and any of its parents, subsidiaries, and officers that Mr. Burnette knew or should have known was a part of the SFS family of companies." (Ex. F., e-mail from Carl Malmstrom to Heather Kramer, dated November 20, 2025.) Mr. Burnette's attorney stated, in the Meet and Confer on December 29, 2025, that he had 9,000 personal emails involving his three law firms, Monarch, Gardner d/b/a Option One, and Heartland, and he is unwilling to produce any of those. (Declaration of Carl Malmstrom, ¶2.) Plaintiff is willing to submit search terms to Burnette to lessen the burden, but Burnette did not provide specific showing of the burden that would be to us.

The service agreements between Monarch and MCS delve into the specific duties of MCS, including "the engagement of collectors on behalf of Applicable Clients in an effort to modify and settle unsecured debts; provided, that all such work shall be conducted by SERVICER under the direct and specific supervision of MONARCH." (Ex. D. at 2.) However, Plaintiff has alleged that this supervision by Monarch was not typically done, and it is very relevant to Plaintiff's claim to determine extent to which this servicing agreement was not accurate. (*See* Plaintiffs FAC, ¶¶12, 16, 85, 96-99, and 106-109, 171-186, 187-197, and 198-202, ECF No. 5.) One of the sources of such relevant information would be Burnette's 9,000 e-mails relating to the running of his law firm.

Burnette also objects on the basis that these materials are "discoverable from other sources." (Ex. B. at 5). It's unclear what other sources Burnette is referring to in this instance. As this Court is aware, Plaintiff is stayed from seeking discovery against Defendants. (*see* ECF No. 68.) This request is for documents showing the business relationship between Burnette and his law firms and Defendants and their related companies. Such documentation would naturally be in the hands of those two parties, and Plaintiff is stayed from requesting those documents from Defendants and any Receivership Defendants, Plaintiff is asking Burnette to produce such documents.

Because the documents illuminating the business relationship between Burnette and Defendants are relevant, and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Requests No. 4 and No. 14.

### b. Request No. 5 and No. 6

Request No. 5 asks Documents "sufficient to show the relationship between You and Hedgewick Consulting, Relialit, Lit Def Strategies, Jason Blust or any company owned, controlled, or affiliated with Jason Blust", while Request No. 6 requests similar documents relating to Jason Blust directly.

Initially, Monarch, and the other law firms that Burnette was a controlling member of, entered into a consulting agreement with Jason Blust and the other firms controlled by Burnette (including, Plaintiff believes, Hedgewick Consulting, Relialit, and/or Lit Def Strategies, in which Blust "shall be the Company's senior executive with primary decision-making authority over the following Company business areas: accounting and finance, attorney network, management of non-attorney support services, human resources and liaison to service providers (the "Services")." (*See* Ex. G. at 1.) Those services of Blust were assigned in 2021 to a company controlled by

Jason Blust called Hedgewick Consulting LLC ("Hedgewick"). (*See* Ex. H. at 1.) Essentially, Jason Blust, and later Hedgewick Consulting LLC would manage almost all parts of Burnette's law firms' operations.

Burnette offered the same boilerplate objections to Requests No. 5 and No. 6 as they offered to Request No. 4. Presumably, the documents and e-mails relating to Jason Blust and his companies are included in the 9,000 personal e-mails that Burnette's counsel states relate to Burnette's law firms. Burnette was willing to produce the agreements between his law firms and Blust and Burnette's law firms and Hedgewick, but no other documents relating to Jason Blust and his companies. The produced agreements lacked Attachment A, which detailed the Consulting Fees that were to be paid to Jason Blust and his companies, and Plaintiff seeks that attachment.

Given the breadth of control that Blust (both on his own and through Hedgewick) had over Burnette's law firms, these documents are very relevant to Plaintiff's case. According to the agreements that Burnette has already produced, Blust and his companies controlled the day-today operations of Burnette's law firms, including the "management of non-attorney support services" like the services provided by Defendant's subsidiaries. (Ex. G. at 1.) Blust's companies are Receivership Defendants (*See CFPB et al. v. StratFS, LLC et al.,* Case No. 1:24-cv-40, W.D.N.Y. ECF No. 366) ("CFPB Action"), Blust is a personal Defendant in the CFPN action, and Blust has refused to respond to any of Plaintiff's Requests for documents on Fifth Amendment grounds. Blust's objections will also be the subject of a forthcoming motion to compel, but for now Plaintiff has no other avenue for their production. One example showing the relationship between Burnette, Blust, and Defendants is an e-mail originating from Burnette to Jason Blust about a complaint filed against Monarch by one of their clients to the Illinois Attorney General's office. This e-mail was then passed onto Darleen Karaszewski at SFS. (*See* Ex. I) It is unclear exactly how this elaborate

8

chain of command worked at Burnette's law firms, but the requested documents from Burnette will help shed light upon it. Any e-mails relating to how Blust and his companies operated Burnette's law firms are highly relevant to our case, and Burnette's boilerplate objections are not viable objections to this request.

With further regard to burden, Burnette has, in a related matter filed by the City of Chicago, previously searched for e-mails between himself and Blust, and had about 1,000 e-mail between himself and Blust. (See Ex. J, excerpt from transcript of deposition of Timothy Burnette in *City of Chicago v. Burnette Legal Group, LLC d/b/a Monarch Legal Group and Strategic Financial Solutions, LLC,* Case No. 2022CH07197, Cir. Ct. Cook Cty, ("the City of Chicago Action") p. 65, lines 18-22.) Burnette's e-mails have already been searched and are highly relevant to Plaintiff's case. There is no reason that Burnette should not produce them.

Because the documents illuminating the business relationship between Burnette and Defendants are relevant and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Requests No. 5 and No. 6.

### c. Request No. 8

Request No. 8 asks for "[a]ll correspondence between yourself and Ryan Sasson that in any way relate to this litigation or to the litigation captioned *Consumer Financial Protection Bureau et al. v. StratFS, LLC et al.*, Case No. 1:24-cv-40, W.D.N.Y." Ryan Sasson ("Sasson"), until SFS was entered into a receivership in January, 2024, was the CEO of SFS. Sasson was also the manager of SFS on MCS's operating agreement dated January 11, 2019. In response to this request, Burnette responded with boilerplate objections, including that it was overbroad, burdensome, not proportional to the needs of this case, that it outside the limited scope of discovery allowed in this case and that it is discoverable from other sources.

In this case, we have a good sense of the very light burden that this request has for Mr. Burnette, as he has already searched his e-mails for communications with Mr. Sasson, and there are not many. In his deposition testimony in the lawsuit with the city of Chicago, Burnette testified that, in response to a search query for Sasson's name, "I think there may be -- like maybe a handful popped up, like a small handful." (See Ex. J., transcript of deposition of Timothy Burnette in the City of Chicago Action, p. 63, lines 13-14.) Despite already having searched for e-mails involving Sasson, and despite already having found only a handful of e-mails, Burnette now states that this request from Plaintiff is overbroad and unduly burdensome. (Ex. B, at 8.) Plaintiff is investigating the connections between Defendants and third parties like Burnette to determine if any non-receivership defendants have any liability to Briggs and other Plaintiffs. To claim that "a handful" of e-mails are unduly burdensome strains credibility. Plaintiff's counsel, after discovering this testimony by Burnette, e-mailed counsel for Burnette on February 23, 2026 asking if they wanted to stand by their objections. On February 25, 2026, counsel for Burnette stated that Burnette would stand on his objections (See Ex. K, e-mails between Scott Priz and Heather Burnette). Plaintiff has offered to provide search to narrow the burden imposed on Burnette. This offer was rejected by Burnette's counsel. (*See Id.*.)

Because the documents illuminating the business relationship between Burnette and Defendants are relevant and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Request No. 8.

### d. Request No. 9

Request No. 9 asks for "[a]ll correspondence between yourself and Thomas Rogus that in any way relate to this litigation or to the litigation captioned *Consumer Financial Protection Bureau et al. v. StratFS, LLC et al.*, Case No. 1:24-cv-40, W.D.N.Y." Thomas Rogus ("Rogus")

was a member attorney of Defendants' related law firms Anchor Law Firm LLC and Commonwealth Law Group. (See Exhibit L,  Affidavit of Thomas Rogus.)  As such, Mr. Rogus was intimately involved in the day-to-day operations of Defendants' fraudulent scheme of deceiving customers into believing that they were hiring a law firm to negotiate their consumer debts.  Additionally, a motion for rule to show cause was recently granted in this case against Rogus for his failure to comply with an Order from Court compelling his to produce documents responsive to a third-party subpoena.  (*See* ECF No. 149).

In response to this Request, Burnette responds with the same boilerplate objections that they listed to Plaintiff's other requests.  Plaintiff has not been made aware of how many e-mails exists between Burnette and Rogus, let alone how many responsive e-mails exist.

Because the documents illuminating the relationship between Burnette and Thomas Rogus are relevant, and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Request No. 9.

### E.  Request No. 10

Request No. 10 asks for "[a]ll correspondence between yourself and Richard K. Gustafson II ("Gustafson") that in any way relate to this litigation or to the litigation captioned *Consumer Financial Protection Bureau et al. v. StratFS, LLC et al.*, Case No. 1:24-cv-40, W.D.N.Y."  In the words Mr. Burnette, Gustafson is "our consultant that replaced Jason Blust."  (Ex. J, transcript of deposition of Timothy Burnette in the City of Chicago Action, p. 65, lines 15-16.)  Gustafson is also an attorney who manages and owns nine laws firms that utilized SFS's services to manage their client's consumer debt files.  It is not clear from Plaintiff's currently received discovery what the relationship is between Mr. Burnette and Mr. Gustafson, but Plaintiff is hoping that the requested materials from Mr. Burnette will shed light on the nature of their business relationship.

11

In response to this Request, Burnette responds with the same boilerplate objections that they listed to Plaintiff's other requests. Plaintiff has not been made aware of how many e-mails exists between Burnette and Gustafson, let alone how many responsive e-mails exist.

Because the documents illuminating the relationship between Burnette and Gustafson are relevant, and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Request No. 10.

### F. Request No. 13

Request No. 13 ask for "[a]ll correspondence between yourself and Michelle Gllagher that in any way relate to this litigation or to the litigation captioned *Consumer Financial Protection Bureau et al. v. StratFS, LLC et al.*, Case No. 1:24-cv-40, W.D.N.Y." Michelle Gallagher (née Hinds) is an attorney who owns Façade Firms Chabner Legal Group, LLC and Hinds Law LLC a/k/a First America Law. She is also a defendant in the *CFPB* action, who is described in their complaint as helping to "manage the day-to-day operations at Lit Def and Fidelis Support Services, LLC (Fidelis)." (CFPB Action, ECF No. 366, ¶91). In a deposition in the City of Chicago Action, a quality control vendor described Gallagher as being one of the attorneys that he reported to as part of his work for Monarch. (See Ex. L., excerpt from transcript of deposition of Devin Kampel in the City of Chicago Action, p. 42, lines 3-12.) Plaintiff has served her with a similar subpoena for documents, has refused to produce any documents to any of Plaintiff's Requests for Documents on fifth amendment grounds. As with Blust, Gallagher's motion to compel production will be shortly forthcoming.

In response to this request, Burnette responds with the same boilerplate objections that were given for the other requests. It is unclear what is burdensome about responding to this request for Burnette, or why Burnette is claiming that this request is irrelevant to claims asserted in this

12

case, given Gallagher's involvement with Blust and various façade firms.

Because the documents illuminating the business relationship between Burnette and Gallagher are relevant, and because Burnette has failed to offer a viable objection to producing the documents, the Court should order Burnette to respond fully to Request No. 13.

<u>**CONCLUSION**</u>

Plaintiff Julia Briggs respectfully requests that the Court grant Plaintiff's motion to compel and enter an order: (1) compelling Burnette to produce documents in response to Request Nos. 1-15 within 21 days; and (2) compelling Burnette to certify the completion of his production under Rule 45.

Dated: February 25, 2026

Respectfully submitted,

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Scott Priz
**PRIZ LAW LLC**
3230 S. Harlem Ave., Suite 221B
Riverside, IL 60546
Tel: (708) 762-3143
priz@priz-law.com

*Attorneys for Plaintiff and the Proposed Class*